# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE STATE OF OKLAHOMA, THE STATE OF KANSAS, THE STATE OF NORTH DAKOTA, DOMESTIC ENERGY PRODUCERS ALLIANCE, and OKLAHOMA FARM BUREAU, INC., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 14-CV-123-JHP-PJC |
| DEPARTMENT OF THE INTERIOR, SALLY JEWELL, FISH & WILDLIFE SERVICE, DANIEL M. ASHE, GARY FRAZER, and DIXIE PORTER, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## Opinion and Order

On April 21, 2014, Defendants Fish & Wildlife Service, et al., ("FWS") filed a Motion to Transfer Venue to the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1404, with supporting memorandum. Dkt.#s 32, 33. On May 9, 2014, Plaintiffs the State of Oklahoma, the State of Kansas, the State of North Dakota (collectively, the "States"), Domestic Energy Producers Alliance ("DEPA") and Oklahoma Farm Bureau, Inc. ("Farm Bureau") (DEPA and Farm Bureau collectively, the "Oklahoma Associations") filed an opposition to the motion, Dkt.# 47, and on May 23, 2014, FWS filed a reply to Plaintiffs' opposition. Dkt.# 55. The Court heard argument on the motion during the scheduling conference on May 30, 2014, and Plaintiffs subsequently filed a notice of additional authorities to which their counsel had referred at the hearing. Dkt.# 65.

The Court of Appeals has identified nine factors that must be considered when a

defendant seeks to disturb a plaintiff's proper choice of venue[1] under 28 U.S.C. § 1404. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515-16 (10th Cir. 1991). Consideration of these factors does not support transfer of this action. Because FWS has not met its burden to demonstrate that relevant circumstances "strongly" favor transfer, controlling precedent dictates that the States' and the Oklahoma Associations' choice of forum should not be disturbed.

Neither does consideration of the "interest of justice" compel transfer of this action. In particular, this Court finds no serious risk that proceeding in Plaintiffs' chosen venue risks an adjudication in this case that would be inconsistent with any prior adjudication by the D.C. District Court in the proposed transferee action, regardless of whether this Court finds Plaintiffs' claims have merit. Prior decisions in that action, in which Plaintiffs were not involved, may (or may not) provide precedent for this Court to follow, but that fact does not justify transferring this case.

## BACKGROUND

1. Plaintiffs' Claims

Three mid-western states[2] and two Oklahoma Associations have brought this action against FWS concerning six species that are the subjects of the Endangered Species Act ("ESA") listing processes (the "State Species"). Plaintiffs allege that, at various times, acting pursuant to statutory mandates and FWS's regulations, FWS designated each of these species as a "candidate species." Plaintiffs allege that the ESA and FWS's implementing regulations required FWS thereafter to reevaluate each of these candidate species annually to determine whether the species should be deemed (i) not warranted for listing, (ii) warranted and subject to proposed listing, or

---

1. FWS does not dispute that venue is proper in the Northern District of Oklahoma. *See* 28 U.S.C. § 1391.
2. Additionally, the State of Nebraska and the New Mexico Department of Game & Fish have moved to intervene in this action as plaintiffs.

(iii) still "warranted but precluded" due to its comparatively low priority. *See* 16 U.S.C. § 1533(b)(3); 50 C.F.R. § 424.14(b). Plaintiffs' action raises claims about when and how FWS decides to move each of these six species from the candidate species category by either proposing to list it as threatened or endangered under the ESA or determining that listing is not warranted.

Defendants and Plaintiffs do not disagree as to the basic procedural requirements under the ESA for listing species as threatened or endangered. Defendants explain that, when an interested person petitions FWS to list a species, the ESA requires FWS to determine within 90 days whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted. Mem. in Supp. of Defs.' Mot. To Transfer Venue at 2 (Apr. 21, 2014), Dkt.# 33 at 2. If FWS makes a positive finding, FWS must then make a finding within 12 months as to whether listing the species is either (1) not warranted; (2) warranted, in which case FWS must publish a proposed rule to list the species; or (3) warranted but precluded, meaning that "immediate proposal and timely promulgation" of a final listing determination is "precluded by pending proposals" to list other species. *Id.* (quoting 16 U.S.C. §§ 1533(b)(3)(B)(i)-(iii); 1533(b)(5)-(6)). Defendants confirm that, after finding that a species is "warranted but precluded," FWS must annually reassess that species and make a new 12-month finding, "including any continued findings that listing the species remains warranted-but-precluded by other higher-priority listing proposals." *Id.* (citing 16 U.S.C. § 1533(b)(3)(C)(i); 50 C.F.R. § 424.14(b)(4). Defendants explain that FWS generally makes its warranted-but-precluded 12-month findings in a Candidate Notice of Review (CNOR), a list comprising those species that are placed or remain in candidate status. *Id.*

Plaintiffs allege that FWS removed two of the State Species, the Rabbitsfoot Mussel and the Lesser Prairie-Chicken, from candidate status and listed them as "threatened" under the ESA without considering retaining either species as a candidate species. Plaintiffs further allege that

in deciding to move the Rabbitsfoot Mussel and Lesser Prairie-Chicken from the candidate species classification, FWS made no effort to account for conservation measures undertaken by, among others, plaintiffs Oklahoma and Kansas, Oklahoma's farmers, and DEPA members. Similarly, Plaintiffs allege FWS proposed to list the Northern Long-Eared Bat as "endangered," again without consideration of retaining its candidate species classification. Plaintiffs allege that, for the remaining three State Species in this litigation, FWS intends to make a similar up-or-out decision under which the species can no longer remain a candidate species and that these actions also will be contrary to the ESA and to FWS's regulations.[3]

Defendants contend that FWS's actions with respect to the State Species are dictated by judicial settlements in *In re Endangered Species Act Sec. 4 Deadline Litigation*, No. 10-mc-377, MDL No. 2165 (D.D.C.) (the "Deadline MDL"), a multi-district litigation in the District Court of the District of Columbia ("D.C. District Court"). The Deadline MDL consolidated twelve lawsuits in various federal district courts challenging FWS's retention of a number of species on the "candidate species" list. In 2010 and 2011, FWS entered into two settlement agreements with the plaintiffs, the Center for Biological Diversity ("CBD") and WildEarth Guardians ("WEG"), under which FWS committed to conduct "up or out" species status reviews for some 250 species on the 2010 CNOR on or before specified deadlines ("the Settlement Agreements"). FWS agreed that by 2018 none of the species subject to the Settlement Agreements would remain on the candidate list.

Plaintiffs allege that, irrespective of the Settlement Agreements, the statute and FWS's regulations require that FWS consider, annually, whether a candidate species should remain as a candidate species. According to Plaintiffs, the statute and FWS regulations require this inquiry, and FWS may not "skip" consideration of this alternative every year. Thus, under Plaintiffs'

---

3. The Greater Sage-Grouse is slated for automatic removal from candidate species classification by 2015, and the Sprague's Pipit and the Arkansas Darter are slated for automatic

theory, FWS's adherence to deadlines for removing the State Species from the candidate species list without the annual evaluation based upon current scientific data and conservation measures undertaken, violates the ESA, the Administrative Procedure Act ("APA"), and the Constitution.

Accordingly, Plaintiffs seek relief from what they allege are violations of law caused by the FWS's actions and intentions regarding the State Species, including: (1) FWS's decision not to consider the statutory alternative of retaining these species within the candidate species classification; (2) FWS's decision to move the six species from candidate species classification without making this determination "solely on the basis of the best scientific and commercial data available . . . after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State . . . to protect such species [including] conservation practices . . . ." 16 U.S.C. § 1533(b)(1)(A); (3) FWS's decision to forego well-documented, science-driven decisions under its guidelines for removing species from the candidate species category, 16 U.S.C. § 1533(h); (4) FWS's disregard or de facto amendment of its regulations requiring FWS to consider retaining a species as a candidate species during each annual review; (5) FWS's violation of Constitutional due process for its imposition of settlement terms on the States and Oklahoma associations who are not a party to these settlements; and (6) FWS's violation of Article II of the Constitution in its abdication of executive duty by transferring, via settlement, its ESA-related decision-making for the species at issue to special interest litigants.

2. Defendants' Motion for Change of Venue

Defendants have moved the Court to transfer this case to the United States District Court for the District of Columbia ("D.C. District Court") for consolidation with the Deadline MDL.[4]

---

removal by 2016.

4. Defendants have not yet answered Plaintiffs' Complaint, and they filed their motion before Plaintiffs filed their Second Amended Complaint. The Court considers Defendants' motion operative with respect to the pending lawsuit, including the Second Amended Complaint.

Defendants cite 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." FWS argues that the "interest of justice" demands that this case be transferred to the venue where FWS entered into its Settlement Agreements in the Deadline MDL.[5]

Defendants confirm that, under their interpretation of the terms of the Settlement Agreements, the State Species (among some 250 others that were on the 2010 CNOR) will cease to be eligible for continued candidate species status as of deadlines set out in those settlements. Defendants concede that FWS has committed itself, when FWS re-visits these candidate species in its 12-month review, not to consider retaining the species in the warranted-but-precluded category, regardless of facts and circumstances surrounding the species at that time, including the priority of the species relative to other candidate species or positive effects of conservation efforts that may be occurring. FWS denies, however, that it is legally obligated to consider doing so.

---

5. FWS petitioned the Judicial Panel on Multi-District Litigation ("JPML") to treat this case as a "tag-along" case for consolidation with the Deadline MDL under 28 U.S.C. § 1407. Notice of Potential Tag-Along Action, No. 2165 (J.P.M.L. Apr. 18, 2014), ECF No. 44. The JPML issued a Conditional Transfer Order, No. 2165 (J.P.M.L. Apr. 23, 2014), ECF No. 45, but vacated that Order following briefing by the parties. Order Vacating CTO, No. 2165 (J.P.M.L. Aug. 11, 2014), ECF No. 75. The JPML's vacation of the Conditional Transfer Order was without prejudice to Defendants' right to renew their motion to the JPML for transfer to the Deadline MDL, should this Court deny Defendants' motion for transfer.

This Court notes that the JPML has stated it often gives deference to the decision of a district court regarding whether to transfer a case, or selection of the transferee district, when such decision is made prior to the Panel's Section 1407 determination. *In re Master Key*, 320 F. Supp. 1404, 1406 (J.P.M.L. 1971); *In re Yarn Processing Patent*, 341 F. Supp. 376, 381-82 (J.P.M.L. 1972); *In re Scientific Control Corp.*, 380 F. Supp. 791, 793 (J.P.M.L. 1974). In denying Defendants' motion for transfer, this Court has not deemed relevant to the merits of Defendants' motion either the JPML's vacation of its earlier order or the potential for further proceedings before the JPML following this denial of Defendants' transfer motion.

In support of their transfer motion, Defendants note that FWS's commitments to schedules, including those affecting the six State Species at issue in this litigation, were negotiated with advocacy organizations and embodied in settlement agreements approved by the District of Columbia Court in the Deadline. Defendants contend that this litigation arose out of the multi-district litigation in the District of Columbia, which that court continues to administer. For these reasons, discussed in detail below, Defendants urge transfer of this action to the Deadline MDL.

## ANALYSIS

1. <u>Standard for Transfer</u>

Defendants contend that this Court should transfer Plaintiffs' case to the District of Columbia under Section 1404(a) "for the convenience of parties and witnesses, in the interest of justice."[6] In this Circuit, a movant seeking to disturb a plaintiff's choice of venue must show that the criteria for transfer "strongly" favor transfer of the case. "The burden of establishing that the suit should be transferred is upon the movant and unless the evidence and the circumstances of the case are strongly in favor of the transfer the plaintiff's choice of forum should not be disturbed." *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967); *Chrysler Credit*, 928 F.2d at 1515-16. Tenth Circuit law is well-settled: "plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992); *see also Tex. Gulf Sulphur*, 371 F.2d at 147; *Tex. E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978) (plaintiff's choice of forum receives "considerable weight"). FWS argues that "minimal consideration" is given to Plaintiff's choice of the forum, FWS Brief at 20, but that is not the law of this Circuit.

---

6. Plaintiffs do not dispute that this action could have originally been brought in the proposed transferee district, i.e., the District of Columbia, satisfying that prong of Section 1404(a).

Courts in this district strictly apply this limitation. Even in an instance where "convenience factors . . . indeed support[ed]" transfer, the Court explained that, absent "a *strong* justification meriting transfer," a transfer motion should be denied. *Titsworth v. City of Muskogee*, No. 07-CV-0576-CVE-SAJ, 2008 WL 112032, at *3-4 (N.D. Okla. Jan. 9, 2008). In *Titsworth*, the Court denied a motion to transfer a case from the Northern District of Oklahoma to the Western District, even though the witnesses, records, and acts giving rise to action were located in the other district. 2008 WL 112032, at *1. Noting that witnesses were not unable to travel to the Northern District, the Court concluded that convenience weighed "slightly in [movant's] favor" but nonetheless could not overcome movant's "burden of demonstrating the need for transfer." *Id.* at *3-4. Thus, even with convenience weighing in favor of transfer, this Court declined to require plaintiff to litigate at a location no more than 50 miles from its chosen venue. More recently, the analysis provided in *Titsworth* was affirmed, the Court reasoning that, "[u]nless the balancing of these [venue] factors strongly favors transfer, the plaintiff's choice of forum should rarely be disturbed" and "[p]laintiff's choice is [ ] given *considerable* weight." *Pullen v. Walgreen Co.*, No. 08-CV-719-GKF-PJC, 2009 WL 311309, at *1 (N.D. Okla. Feb. 9, 2009) (emphasis added) (citations and internal quotation marks omitted). *See also BSB Leasing, Inc. v. Reservation Ctr., Inc.*, No. 08-CV-02295LTB, 2008 WL 5411478, at *3 (D. Colo. Dec. 29, 2008) ("'Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue.'") (quoting *Scheidt*, 956 F.2d at 966).

    2. Assessment of *Chrysler Credit* Factors

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Chrysler Credit Corp.*, 928 F.2d at 1516 (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). We are to

consider nine specific factors in evaluating convenience and fairness of the Plaintiffs' chosen forum:

> Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* at 1516 (quoting *Tex. Gulf Sulphur Co.*, 371 F.2d at 147). As discussed below, the Court concludes that, measured against the *Chrysler Credit* criteria, FWS has not made the "strong" showing required for transfer.

i. ***Plaintiffs' choice of forum***: The original plaintiffs Oklahoma and the Oklahoma Associations, and then Kansas and North Dakota by virtue of their inclusion as plaintiffs in the First and Second Amended Complaint, unambiguously chose this Court as the forum for their claims. The State of Nebraska and the New Mexico Department of Game and Fish have moved for leave to intervene in this action. All these plaintiffs have selected this Court as their forum of choice, and this choice must be respected absent a strong showing otherwise.

ii. ***The accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses***: The Court presumes that the merits of Plaintiffs' claims will likely be determined by motion, and that the case will likely be resolved on the basis of the administrative record and without trial. But if further evidence were required at some stage of the proceedings, Defendants have not established that the Parties can more readily secure witnesses and documents in the District of Columbia than in the Northern District of Oklahoma. Plaintiffs contend that, if testimony were necessary on any of a number of subjects, witnesses are more likely located in Oklahoma or the Western U.S. than in Washington, D.C. Pls.' Resp. to Defs.' Mot. to Transfer Venue at 7-8 (May 9, 2014), Dkt. # 47. Plaintiffs

state that these "western" subjects include (i) conservation measures for the Lesser Prairie-Chicken undertaken by the Western Association of Fish and Wildlife Agencies and by states, farms, and oil and gas companies, (ii) the impact of listing decisions on the Plaintiff States' respective programs and on private undertakings by entities in these states, (iii) the Plaintiff States', the Farm Bureau's, and DEPA members' participation in FWS-approved candidate conservation agreements with assurances ("CCAAs"), and (iv) other evidence bearing on the species that are the subject of this litigation. *Id.* Conservation efforts undertaken by the Oklahoma Department of Wildlife Conservation concerning the Rabbitsfoot Mussel – conservation efforts which allegedly were impeded by the listing of that species – have occurred within the Northern District. *Id.* at 8 n.7. DEPA and Farm Bureau members are alleged to reside in the Northern District. Second Am. Compl. ¶¶ 15, 19-20 (July 14, 2014), Dkt.# 70. The Court agrees with Plaintiffs that these witness groups are more accessible and capable of testifying in the Northern District of Oklahoma than they would be if this action had proceeded in the D.C. District Court.

FWS argues the FWS officials and their counsel who negotiated the Settlement Agreements approved in the Deadline MDL reside in or near Washington, D.C. Dkt. # 33 at 14, 22. FWS states that "to the extent that witnesses or the production of factual information would be required in this case, those witnesses and that information are located in or near the District of Columbia." *Id.* at 22. However, the Court notes that, with respect to FWS's action listing the Lesser-Prairie Chicken as "threatened," which Plaintiffs challenge in this action, FWS appears to have managed the listing process from its Tulsa field office, which was the designated FWS office to receive comments on the proposed listing decision. 77 Fed. Reg. 73,828 (Dec. 11, 2012); 78 Fed. Reg. 26,302 (May 6, 2013); 78 Fed. Reg. 75,306, 75,307 (Dec. 11, 2013); 79 Fed. Reg. 4,652, 4,653 (Jan. 29, 2014). The final rule listing the Lesser-Prairie Chicken as "threatened" noted that "comments and materials received, as well as supporting documentation

used in preparing this final rule" were only available at FWS's Tulsa field office, and identified the Acting Field Supervisor in the Tulsa field office as a point of contact for further inquiries. 79 Fed. Reg. 19,974 (Apr. 10, 2014); 79 Fed. Reg. 20074 (Apr. 10, 2014).

But Defendants do not dispute Plaintiffs' contention that representatives of CBD and WEG, as parties to the Settlement Agreements, might also provide relevant testimony, and that their headquarters in, respectively, Tucson and Santa Fe are closer to this District than to the District of Columbia. Thus, if testimony becomes necessary, the potential convenience of the District of Columbia for Defendants' counsel appears no greater than the convenience of the Northern District of Oklahoma for Plaintiffs' counsel. On balance, consideration of this factor does not support transfer.

iii. ***The cost of making the necessary proof***: FWS does not claim that this factor militates in favor of transferring the litigation to the District of Columbia. While Department of Justice attorneys for FWS who are based in Washington, D.C., will incur costs to travel to Tulsa, those costs result from the Department's decision to assign Washington D.C. attorneys to the case, rather than using Department of Justice attorneys located in or closer to Tulsa. Litigating this action in the Northern District of Oklahoma is clearly less costly for the State of Oklahoma, DEPA, and the Oklahoma Farm Bureau. Additionally, the cost to counsel for Kansas and North Dakota to travel to Washington, D.C. is no less than the cost to Defendants of traveling to Tulsa, Oklahoma.

iv. ***Questions as to the enforceability of a judgment if one is obtained***: FWS argues that "there are major questions regarding the enforceability of any judgment that this Court would enter in favor of Plaintiffs." Dkt. # 33 at 17. Specifically, FWS suggests that if the Court orders the relief that Plaintiffs seek, that order would "bar" FWS from carrying out its obligations under the Settlement Agreements. *Id*. With great respect for the co-ordinate Court and the importance of judicial comity, this Court is not persuaded that it should not issue, or could not enforce, a

judgment that would remedy FWS's allegedly unlawful actions in regard solely to the six State Species addressed in the Second Amended Complaint. The relief that Plaintiffs seek is limited. Plaintiffs ask the court to (i) vacate FWS's listing of the Lesser Prairie- Chicken and the Rabbitsfoot Mussel and (ii) enjoin the proposed listing of any of the State Species, including the Lesser Prairie-Chicken, the Rabbitsfoot Mussel, the Northern Long-Eared Bat, the Sprague's Pipit, the Arkansas Darter or the Greater Sage-Grouse, unless and until FWS shall have considered whether the species should continue to be classified as "warranted but precluded" in compliance with 50 C.F.R. § 424.10 and § 424.14(b)(3) and Section 4 of the ESA. The relief will affect only these six species within their respective regional or local ranges. This Court need not address FWS's actions or planned actions under the Settlement Agreements with regard to making listing decisions for the other species covered by the Settlement Agreements. Nor will the Court adjudicate any claim by any person not before the Court.

Moreover, Defendants acknowledge that the D.C. District Court retains jurisdiction to modify the Settlement Agreements and that FWS could seek modification if it believed it could not comply with this Court's order granting Plaintiffs' requested relief and the Settlement Agreements. Reply in Supp. of Defs.' Mot. To Transfer Venue at 7 (May 23, 2014), Dkt. # 55. The Settlement Agreements themselves provide that they may not be interpreted to "constitute a commitment or requirement that Defendants take any action in contravention of the ESA, the APA or any other law or regulation, either substantive or procedural." CBD Settlement Agreement ¶ 3, *In re Endangered Species Act Sec. 4 Deadline Litig.*, No. 10-mc-377, MDL No. 2165 (D.D.C. July 12, 2011), Dkt. # 42-1. The Court concludes the D.C. District Court could modify the Settlement Agreements to accommodate a judgment by this Court that, solely as to the six State Species, FWS's promise to disregard the alternative of "warranted but precluded" status was unlawful under the APA, the ESA, or both. While this Court ventures no finding at

this time on the merits of Plaintiffs' claims, it is not persuaded that, if Plaintiffs prevail, it could not provide and enforce relief for Plaintiffs. This factor does not support transfer.

  v. ***Relative advantages and obstacles to a fair trial***: Defendants do not suggest that they would not receive equally fair and just treatment in both District Courts. As Defendants note, in a record review case, there are "'no perceivable advantages or obstacles to a fair trial.'" Dkt.# 33 at 22 (citing *Friends of Norbeck v. U.S. Forest Serv.*, No. 10–cv–2164–AP, 2010 WL 4137500, at *5 (D. Colo. Oct. 18, 2010)). This factor does not support transfer.

  vi. ***Difficulties that may arise from congested dockets***: Defendants suggest that this Court's docket is so congested as to justify transferring this litigation to the District of Columbia. However, Plaintiffs state they do not perceive serious congestion in this Court that would hinder their efforts to obtain relief. Defendants argue the average time required for resolution of a case without trial is a measure of the amount of time it would take a District Court to decide a record review case. In 2013, the number was 12.3 months in the Northern District of Oklahoma and 9.8 months in the D.C. District Court. Dkt.# 33 at 22 (citing Administrative Office of the United States Courts, Federal Judicial Caseload Statistics, Table C-5 at 3). However, the Court notes that nothing in the cited table or elsewhere in the Federal Judicial Caseload Statistics indicates how many of the cases disposed of by "court action" "before pretrial conference" were settled and dismissed with the court's approval, or in how many the court decided a dispositive motion. Only the latter might be analogized to disposition of a record review case on cross-motions for summary judgment. Defendants do not show how the two Districts compare in that regard.

  Defendants also contend that the pending number of cases per judge is higher in the Northern District of Oklahoma than in the D.C. District Court (146 vs. 104). But, as Plaintiffs note, Dkt.# 47 at 12, while the D.C. District Court has fewer cases assigned per judge, cases can linger on that docket longer than in this Court. In the Northern District of Oklahoma, only 4.0% of pending civil cases are more than three years old, and the district has only nine such cases per

judge. In the D.C. District Court, 16.5% of cases are over three years old, and the district has 26 such cases per judge. While none of these measures are dispositive, the Court finds Defendants have not demonstrated the Northern District of Oklahoma's docket is any more congested than the D.C. District Court.

vii. ***The possibility of the existence of questions arising in the area of conflict of laws***: As FWS notes (Dkt.# 33 at 22), there is no potential for conflict of laws in this litigation. Plaintiffs' claims are founded on the ESA and the APA, which are uniformly applied in all judicial districts. This factor does not support transfer

viii. ***The advantage of having a local court determine questions of local law***: As FWS notes (Dkt.# 33 at 22), the only law to be applied in this matter is federal law. This factor does not support transfer.

ix. ***All other considerations of a practical nature***: FWS does not claim that other considerations of a practical nature provide support disturbing Plaintiffs' choice of venue, and the Court is unaware of any such considerations.

3. "Interest of Justice"

Notwithstanding the *Chrysler Credit* factors do not favor transfer, Defendants propose an alternate standard, arguing that the Court may disregard these factors and consider instead "the interest of justice" as a sufficient basis for disturbing Plaintiffs' choice of venue. Dkt.# 33 at 17. The Court does not agree that, under the law of this Circuit, the Court may consider the "interest of justice" a separate component of its Section 1404(a) transfer analysis or that "interest of justice" is different from and can supersede the *Chrysler Credit* factors. On its face, in section 1404(a) "the convenience of the parties" subsumes "interest of justice."[7]

---

[7] Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The phrase "in the interest of justice" appears to modify the phrase "for the convenience of the parties." *See NACS v. Bd. of Governors of*

However, the Court does not reach this issue because Defendants have not shown how consideration of the "interest of justice" would support transfer in any event. Defendants cite as a "paramount" interest the avoidance of "inconsistent judgments" as a key element of "systemic integrity." Dkt.# 33 at 14. The crux of Defendants' argument is that "Plaintiffs seek to obtain a judgment from this Court that is inconsistent with those rendered by the D.C. District Court and the D.C. Circuit." *Id.* at 15.

It may be that justice is generally not served where a party seeks in subsequent litigation to "'circumvent the force and effect of adverse rulings in prior litigation.'" *Id.* at 14 (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005). In *Samsung* the court denied a motion for transfer brought by Rambus after concluding that "Rambus acted as it did for one purpose: to avoid litigating in this district, a forum that for two and a half years was among *its preferred venues* for conduct of patent litigation with DRAM manufacturers, including Samsung." *Samsung Elecs.*, 386 F. Supp. 2d at 723 (emphasis added). Rambus had litigated with Samsung – and lost – in the forum it now sought to avoid. But in the present case Plaintiff States and Associations were not parties to the litigation in the District of Columbia, nor to the

---

*Fed'l Reserve Sys.*, No. 13-5270, 2014 WL 1099633, at *10-11 (D.C. Cir. Mar. 21, 2014) (noting widespread convention that a phrase set off with commas is descriptive). Therefore, Section 1404(a) appears to provide that a district court may transfer a case "for the convenience of parties and witnesses" *in order to* promote the interest of justice. Nothing in the language of this section can be read to make "the interest of justice" a separate ground for transfer. Had Congress wished to establish "interest of justice" as a separate factor it would have written "For the convenience of parties and witnesses *or* in the interest of justice." But it did not.

In its decisions reviewing denials of transfer motions, the Tenth Circuit has not recognized "interest of justice" as an independent basis for transfer. *Chrysler Credit* says the "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is *inconvenient*." 928 F.2d at 1515 (citing *Tex. E. Transmission Corp.*, 579 F.2d at 567; *Wm. A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir.1972)) (emphasis added). The Circuit Court enumerated the nine factors that a district court will consider and did not mention "interest of justice" as another relevant factor, unconnected to consideration of the factors bearing on convenience.

Settlement Agreements.[8] Defendants have presented no authority for the more sweeping principle they seek to assert – that, in the interest of justice, third parties adversely affected by litigation to which they were not privy must litigate any claim "related" to that litigation in the original forum.

Defendants also argue Plaintiffs should litigate this case in the D.C. District Court because this action "grows directly out of multi-district litigation." Dkt.# 33 at 13. This Court is not persuaded the D.C. District Court's decision to approve the Settlement Agreements means that it would never be in the interest of justice for another court to entertain an action challenging listing decisions for any of the hundreds of species covered by the Settlement Agreements. In approving the Settlement Agreements, the D.C. District Court disclaimed any intent to address the substantive validity of any listing decision that may flow therefrom. *See, e.g.*, Order Denying Safari Club Intervention, at 2-3, 10, 20, *In re Endangered Species Act Sec. 4 Deadline Litig.*, No. 10-mc-377, MDL No. 2165 (D.D.C. Sept. 9, 2011), Dkt.# 54.

Finally, this Court finds no serious risk of "inconsistent adjudications" in this Court and in the D.C. District Court, regardless of whether this Court finds Plaintiffs' claims have merit.[9] The D.C. District Court did not address or adjudicate the legal claims that Plaintiffs raise here.

---

8. Had the Plaintiffs sought to intervene in the Deadline MDL to challenge the settlements, it is reasonable to believe that FWS would not have supported their participation in the face of the opposition of plaintiffs in that case, and that the D.C. District Court would have denied intervention, as FWS and the D.C. District Court did when Tejon Ranch and Safari Club International attempted to intervene. *See In re Endangered Species Act Section 4 Deadline Litig.*, 270 F.R.D. 1 (D.D.C. 2010) (denying motion of Tejon Ranch Company to intervene); *In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. 1 (D.D.C. 2011) (denying motion of Safari Club International to intervene).

9. Plaintiffs were not before the District of Columbia court, so their claims could not have been adjudicated. Had a party before that court raised the same claims as Plaintiffs allege in this action, the resulting decision might have had precedential value, which would be considered by this Court under the principle of stare decisis as this case progresses. But precedent is not equivalent to adjudication, and the risk that one court may not follow the precedent of another, in another Circuit, is not a basis for disregarding plaintiffs' venue choices and transferring cases to that other court in the "interest of justice."

The D.C. District Court's approval of the Settlement Agreements did not adjudicate the legality of a proposal to list the six species at issue in this case or, for that matter, any specific species. *See In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. at 9 ("[T]he substantive question whether or not . . . species should be listed as threatened or endangered is not at issue in these consolidated cases or in the settlement agreements."). To approve the Settlement Agreements, the D.C. District Court was not required to reach the merits of any of the issues raised in Plaintiffs' Second Amended Complaint in this action.[10] Even if the D.C. District Court were deemed to have adjudged the Settlement Agreements consistent with the ESA, this Court has not been presented with a decision by that court that notice and comment would not be required under the APA in order to implement the elimination of potential warranted-but-precluded status for hundreds of species, including the State Species. The D.C. District Court did not address, either in the MDL settlement process or in the related cases cited by Plaintiff, one of Plaintiffs' central claims, *i.e.*, that FWS cannot disregard its regulations in its annual

---

10. The CBD Settlement Agreement demonstrates the limited nature of the D.C. District Court's review. CBD asserted that, in reviewing the Settlement Agreement, the court's function was merely to assure itself that the terms of the agreement "are fair and adequate and are not unlawful, unreasonable, or against public policy." Joint Mot. for Approval of Settlement Agreement & Order of Dismissal of the Center's Claims at 2, *In re Endangered Species Act Sec. 4 Deadline Litig.*, No. 10-mc-377, MDL No. 2165 (D.D.C. July 12, 2011), ECF No. 42 (citing *United States v. D.C.*, 933 F. Supp. 42, 46-47 (D.D.C. 1996)). Accordingly CBD urged that a court should not substitute its judgment for that of the parties to a settlement agreement. Importantly, as CBD pointed out, a court does not reach the merits of the plaintiff's claims when reviewing a settlement agreement, and its duties in reviewing a settlement are "fundamentally different" from its duties when adjudicating claims on the merits. *Id*. at 3.

In its Order, the D.C. District Court made no findings, provided no analysis, and said nothing beyond approving the Settlement Agreement as an enforceable order and dismissing CBD's actions in the Deadline MDL. CBD's claims were dismissed with prejudice, with the Court retaining jurisdiction only to "oversee compliance with the terms of this Agreement and to resolve any motions to modify such terms." CBD Settlement Agreement ¶ 10, ECF No. 42-1.

Thus, the D.C. District Court did not adjudicate the merits of CBD's or any of its co-plaintiffs' claims with respect to the listing of any species, nor did it determine that FWS' alleged failure to take timely action, whether on 90-day findings, annual consideration of candidate species, or listing decisions, was unlawful. The Court merely approved a settlement under which FWS agreed to take certain actions on a specified timetable, and reached no legal conclusions in the process.

reviews of candidate species on the CNOR, nor remove species from that list without considering whether they should remain classified as "warranted but precluded" without going through legally required procedures to amend the regulations to remove that requirement.

As discussed above, by their terms the Settlement Agreements may not be interpreted to "constitute a commitment or requirement that Defendants take any action in contravention of the ESA, the APA, or any other law or regulation, either substantive or procedural." A finding by this Court that FWS's up-or-out listing commitments for the State Species violates APA procedural requirements, or the procedural requirements of the ESA, would not be inconsistent with or contradict the terms of those settlements or the D.C. District Court's approval of them. The Settlement Agreements disclaim any intention to require FWS to act unlawfully, as Plaintiffs allege FWS has done and will do in connection with the State Species. CBD Settlement Agreement ¶ 3, Dkt.# 42-1.

The D.C. District Court's denial of intervention to the Safari Club, and the D.C. Circuit's affirmance of that decision, do not constitute an "adjudication" with which Plaintiffs' claims in this action are inconsistent. That decision did not present the issues that Plaintiffs raise in this Court. The District Court denied intervention because Safari Club alleged that FWS failed to follow its guidelines for ranking species for listing consideration. *In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. 1. The District Court found that the guidelines are not binding on FWS. Therefore, Safari Club had not alleged FWS's violation of a "legally required procedure" under the guidelines and, accordingly, lacked "procedural standing." *Id.* at 6.

In the present action, by contrast, Plaintiffs allege that FWS's decisions to list the Lesser Prairie-Chicken and Rabbitsfoot Mussel, and its promise to make an "up or out" decision on the other four State Species, without considering the option of retaining a "warranted but precluded" classification, directly violate FWS regulations (as well as the ESA, APA and the Constitution). The D.C. Circuit affirmed Safari Club's lack of standing based on Safari Club's specific

allegations of injury, *In re Endangered Species Act Section 4 Deadline Litigation-MDL No. 2165*, 704 F.3d 972 (D.C. Cir. 2013). But those allegations were different from the legal violations by FWS that Plaintiffs allege in this Court.

## CONCLUSION

"[P]laintiff's choice of forum should rarely be disturbed." *Scheidt*, 956 F.2d at 965; *see also Tex. Gulf Sulphur*, 371 F.2d at 147. Defendants have not carried their burden under *Chrysler Credit* of establishing that the evidence and the circumstances of the case are "strongly in favor of the transfer" of this action to the Deadline MDL. None of the nine factors under *Chrysler Credit* supports transfer. Defendants have not overcome the high degree of deference that the Court must give to the choice of Plaintiff States and Oklahoma Associations to bring and prosecute their claims in this Court.

The D.C. District Court appears to have anticipated actions – like this one – being filed in other jurisdictions and did not view the Settlement Agreements as foreclosing the right of a plaintiff to select an alternate forum to challenge specific listings when they occur.[11] *In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. at 9 (recognizing that an opponent to Settlement Agreements may file "its own lawsuit to protect [its] interests directly" upon the actual listing of a species causing injury to plaintiff). Retaining this action in Plaintiffs' chosen forum is not inconsistent with the stated expectations of the D.C. District Court.

Accordingly, Defendants Motion to Transfer Venue is hereby DENIED.

---

11. When asked by Judge Sullivan about the effect of the MDL Settlement Agreements on other plaintiffs' ability to file an action focused on a particular species covered by the "up or out" procedure, FWS counsel assured the court that "[t]hey're free to do that, Your Honor. There is nothing in these agreements that foreclose[s] the right of such parties to do so." Tr. of Status Conference at 9:6-9, *In re Endangered Species Act Sec. 4 Deadline Litig.*, No. 10-mc-377, MDL No. 2165 (D.D.C. July 12, 2011), ECF No. 86. FWS counsel went on to say "the Government will ask the judge in that case where the lawsuit is filed, *which might be a different court*, not to impose a remedy that would interfere with this agreement. . . . Those plaintiffs are free to go to court." *Id*. at 9:18-22 (emphasis added).

**IT IS SO ORDERED** this 22nd day of September, 2014.

James H. Payne
United States District Judge
Northern District of Oklahoma